**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

| | |
|---|---|
| Michele Bonzi, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No.: 20-cv-50309 |
| v. ) | |
| ) | Magistrate Judge Margaret J. Schneider |
| Kilolo Kijakazi, ) | |
| Commissioner of Social Security,[1] ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Michele Bonzi, seeks review of the final decision of the Commissioner of the Social Security Administration denying her disability benefits. The parties have filed cross motions for summary judgment [26], [31]. For the reasons set forth below, the Court finds that this matter should be remanded for further proceedings consistent with this opinion.

**BACKGROUND**

**A. Procedural History**

On July 15, 2017, Michele Bonzi ("Plaintiff") filed for disability and disability insurance benefits and supplemental security income. R. 14. These applications alleged a disability beginning on May 26, 2017. *Id.* The Social Security Administration ("Commissioner") denied her applications on January 5, 2018, and upon reconsideration on May 4, 2018. *Id.* Plaintiff filed a written request for a hearing on May 16, 2018. *Id.* On July 3, 2019, a hearing was held by Administrative Law Judge ("ALJ") Jessica Inouye where Plaintiff appeared virtually and testified. Plaintiff was represented by counsel. *Id.* James J. Radke, an impartial vocational expert ("VE"), also appeared and testified. *Id.*

On September 5, 2019, the ALJ issued her written opinion denying Plaintiff's claims for disability, disability insurance benefits, and supplemental security income. R. 14-22. Plaintiff appealed the decision to the Appeals Council, and the Appeals Council denied Plaintiff's request for review. R. 1-6. Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. *See* 42 U.S.C. § 405(g); *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007). The parties have consented to the jurisdiction of this Court. *See* 28 U.S.C. § 636(c); [7]. Now before the Court are Plaintiff's motion for summary judgment [26], the Commissioner's cross-motion for summary judgment and response to Plaintiff's motion for summary judgment [31], and Plaintiff's reply brief [32].

---

[1] Kilolo Kijakazi has been substituted for Andrew Saul. Fed. R. Civ. P. 25(d).

### B. The ALJ's Decision

In her ruling, the ALJ applied the statutorily required five-step analysis to determine whether Plaintiff was disabled under the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4). At step one, the ALJ found that Plaintiff had not been engaging in substantial gainful activity since the alleged onset date of May 26, 2017. R. 16. At step two, the ALJ found that Plaintiff had the following severe impairments: diabetes mellitus; asthma; lymphedema; frozen shoulder; degenerative joint disease, left knee; and obesity. *Id*. The ALJ found that these impairments significantly limited Plaintiff's ability to perform basic work activities. *Id*. At step three, the ALJ found that Plaintiff did not have an impairment or combination or impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. R. 18.

Before step four, the ALJ found that Plaintiff had a residual functional capacity ("RFC") to perform light work but with the following limitations: can occasionally push and pull with the bilateral upper extremities; occasional overhead reaching, bilaterally; no climbing ladders, ropes, or scaffolds; occasional climbing of ramps and stairs; occasional stooping, kneeling, crouching, and crawling; and must avoid concentrated exposure to extreme cold, extreme heat, humidity, and pulmonary irritants outside of the type of indoor temperature controlled work environment. R. 18. At step four, the ALJ found that Plaintiff was able to perform past relevant work as a performing arts and drama teacher (DOT 150.027-014) and director (DOT 150.067-010). R. 21. Therefore, the ALJ concluded that Plaintiff was not disabled under the Social Security Act at any time from May 26, 2017, through the date of decision, September 5, 2019. *Id*.

### STANDARD OF REVIEW

The reviewing court evaluates the ALJ's determination to establish whether it is supported by "substantial evidence," meaning "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Moore v. Colvin*, 743 F.3d 1118, 1120-21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Substantial evidence is "more than a mere scintilla." *Wright v. Kijakazi*, No. 20-2715, 2021 WL 3832347, at *5 (7th Cir. 2021). "Whatever the meaning of 'substantial' in other contexts, the Supreme Court has emphasized, 'the threshold for such evidentiary sufficiency is not high.'" *Id*. (quoting *Biestek v. Berryhill*, 139 S.Ct. 1148, 1153 (2019)). As such, the reviewing court takes a limited role and cannot displace the decision by reconsidering facts or evidence or by making independent credibility determinations, *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008), and "confines its review to the reasons offered by the ALJ." *Green v. Astrue*, No. 11 CV 8907, 2013 WL 709642, at *7 (N.D. Ill. Feb. 27, 2013).

The court will only reverse the decision of the ALJ "if the record compels a contrary result." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021) (citations and quotations omitted). The court is obligated to "review the entire record, but [the court does] not replace the ALJ's judgment with [its] own by reconsidering facts, re-weighing or resolving conflicts in the evidence, or deciding questions of credibility. [The court's] review is limited also to the ALJ's rationales; [the court does] not uphold an ALJ's decision by giving it different ground to stand upon." *Jeske v.*

*Saul*, 955 F.3d 583, 587 (7th Cir. 2020). Additionally, an ALJ "need not specifically address every piece of evidence, but must provide a logical bridge between the evidence and his conclusions." *Bakke v. Kijakazi*, 62 F.4th 1061, 1066 (7th Cir. 2023) (citations and quotations omitted). *See also Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015).

## DISCUSSION

In her motion, Plaintiff argues that the ALJ's RFC determination was not supported by substantial evidence because the ALJ failed to confront multiple lines of evidence[2], one of which was Plaintiff's alleged "need to elevate her legs due to grade 1 lymphedema." [26], p. 9. The ALJ's RFC determination provided for "light work" with additional limitations, but it did not include a limitation related to leg elevation. R. 18. Plaintiff alleges that this was an error rendering the RFC unsupported by substantial evidence. Specifically, Plaintiff argues the ALJ ignored Plaintiff's medical evidence demonstrating leg conditions that would substantiate her testimony about leg elevation limitations and make such limitations necessary to her RFC. [26], p. 9-12. The Commissioner contends that the ALJ correctly relied on medical opinions of the state agency reviewing physicians, who did not include leg elevation restrictions, rather than on the subjective complaints of Plaintiff regarding the need to elevate her legs. [31], p. 11-12. The Commissioner further notes that Plaintiff's edema was not present or mild during multiple examinations and that she was not ordered by a provider to elevate as was at issue in caselaw cited by Plaintiff. [31], p. 12. Accordingly, the Court examines Plaintiff's medical evidence, as well as the hearing testimony of both Plaintiff and the VE, in turn to determine whether the ALJ's RFC determination was supported by substantial evidence and, if not, whether any error nonetheless constituted harmless error.

As reported by the ALJ, the Plaintiff suffers from lymphedema, which is characterized as a "severe" impairment. R. 16. Plaintiff's medical records show that, while the severity of her lymphedema may have fluctuated over the years, she appears to have been consistently afflicted by the condition from roughly 2017 onwards. R. 503-508; 924; 955; 1130; 1138; 1182; 1187; 1258; 1269. Though the ALJ attempted to negate the consistency of Plaintiff's lymphedema, the ALJ's Order only cited to three medical examinations which reported "no edema". R. 20 (citing R. 1199-1212; 1303-05). Two of those three examinations were focused on issues unrelated to lymphedema—such as for an upper respiratory tract infection or for asthma and obstructive sleep apnea—and are consequently not overly instructive on the issue in comparison to the other records. *Compare* R. 503-508; 924; 955; 1130; 1138; 1182; 1187; 1258; 1269, *with* R. 1199-1212; 1303-05.

Further, although Plaintiff does not appear to have an explicit medical order to elevate during her disability onset period (she does have an order to elevate from an ER visit that predates the disability onset date by 7 months), she has herself reported to medical providers that she elevates to relieve pain and swelling in her legs. R. 458; 503; 1295-99. There is no indication in the record that any provider dissuaded her from continuing to elevate upon learning she does so to relieve pain and swelling. *Id.*

---

[2] Plaintiff makes arguments about several lines of evidence the ALJ allegedly ignored, but for purposes of this opinion only Plaintiff's leg elevation argument will be addressed.

Plaintiff testified that she elevates her legs "[a]s much as I can whenever I can… three to four times a day at least… [at] about probably like heart level" even though she does not have a direct medical order to elevate after her disability onset date. R. 43-44. Plaintiff further testified that she has a particular need for elevation if she has to go to the store, an activity that requires her to then "[h]ave to come home and… have to elevate… and just try to whenever I can sitting [*sic*]." R. 43. Even if she has not completed an activity that day like going to the store, Plaintiff testified that, at minimum, "[b]y 5:00, I have to sitting and elevating [*sic*] the rest of the night." *Id.* Plaintiff did not offer any further details on the amount of time she spends elevating during the "[t]hree to four times a day" she elevates because she ultimately has "[c]onstant pain in my legs non-stop every day" that is not fully alleviated by elevation for an identifiable time. *Id.*

The ALJ questioned the VE about leg elevation during the hearing. R. 69-70. The ALJ asked the VE if the Plaintiff could perform her past work as a performing arts teacher and a director if she were required to elevate her legs for a 20 minute period during the day; the VE responded that could be possible if it could be accomplished during an educator's prep period, but that if it had to be done at times outside of the prep period, it would not be feasible. R. 70. The ALJ then expanded her inquiry to include other professions and asked the ALJ how "[w]orkday or light jobs" would be impacted if "[t]he individual would need to elevate to the heart level during the workday for 20 minutes." *Id.* The VE testified that such elevation "[w]ould not be feasible without some extraordinary job modification." *Id.* The ALJ did not ask any further questions about leg elevation. *Id.*

Despite all of this, leg elevation was not discussed by the ALJ at any point in her opinion. In *Smith v. Astrue*, the Seventh Circuit confronted a comparable issue about insufficient disposal of a plaintiff's leg elevation claims. 467 Fed. Appx. 507, 510-511 (7th Cir. 2012). In *Smith*, the plaintiff alleged a need to elevate her leg during the workday and the evidence supporting her claim included plaintiff's testimony and disability application reports, an order to elevate after a hospital visit, and records from follow-up appointments after the hospital visit that indicated plaintiff had moderate or severe edema in her leg. *Smith*, 467 Fed. Appx. at 510-511 (7th Cir. 2012). The Seventh Circuit found this evidence sufficient to warrant the ALJ's full consideration of the issue and remanded when the ALJ instead simply dismissed the plaintiff's leg elevation argument with a "cursory comment on [the] point" and some unexplained cites to medical records. *Id.*

The ALJ's decision here comes up even shorter. The ALJ did not offer even a "cursory comment" on leg elevation, let alone a logical bridge explaining why an RFC limitation for leg elevation was not included. Plaintiff presented record evidence comparable to that present in *Smith* substantiating her claimed need to elevate. Specifically, the record includes substantial medical records documenting Plaintiff's lymphedema, Plaintiff's testimony as to her need to elevate, and records that indicate Plaintiff shared her elevation routine with her doctors. Given this record, the ALJ should have addressed the need for a leg elevation limitation in formulating the RFC. *See Burton v. Astrue*, 2012 WL 2905363, at *10-11 (C.D. Ill. 2012) (remanding where plaintiff's evidence of leg elevation was plaintiff's testimony and the ALJ failed to satisfactorily consider or develop plaintiff's testimony before dismissing an elevation limitation in the ALJ's decision). Accordingly, the RFC is not supported by substantial evidence.

Finally, because the VE testified that an elevation limitation would impact the jobs available to Plaintiff, the ALJ's error in not discussing leg elevation "[c]annot be deemed harmless because we cannot say 'with great confidence' that the result would be the same on remand." *Smith* 467 Fed. Appx. at 511. The ALJ was explicitly told by the VE that the issue of elevation is one that would inherently impact the jobs available to plaintiff. R. 70. The VE's testimony establishes that if the Plaintiff has to elevate her legs during the day, that requirement would significantly limit Plaintiff's employment options. Specifically, if Plaintiff either needs to elevate during times outside of an educator's prep period (which seems likely if Plaintiff's testimony is accurate that she elevates at least three times a day) or needs to elevate to heart level in another type of job during the workday, jobs available to Plaintiff would be impacted. In other comparable situations, court have ordered remands. *See Cichon v. Colvin*, 2014 WL 1154156, at *6 (N.D. Ill. 2014) (remanding where the ALJ failed to adequately evaluate plaintiff's evidence of a medical order to elevate and the VE testified that an elevation requirement of the height asserted by plaintiff would eliminate the available jobs); *Hill v. Colvin*, 2017 WL 1197670, at *5 (C.D. Ill. 2017) (remanding where the ALJ did not sufficiently address plaintiff's testimony and record evidence on elevation and the VE cautioned that an elevation requirement would functionally eliminate plaintiff's job opportunities); *Rouse v. Comm'r of Soc., Sec.*, 2018 WL 480829, at *5-6 (N.D. Ind. 2018) (remanding where the ALJ dismissed plaintiff's testimony on leg elevation without explaining why and the VE warned that an elevation limitation, if truly required, would make plaintiff ineligible for both past and other work without an accommodation).

Thus, the RFC is not supported by substantial evidence because the ALJ failed to explain why she did not adopt an RFC limitation relating to leg elevation and this error is not harmless. Accordingly, Plaintiff's claim is remanded on the issue of leg elevation. On remand the ALJ must consider medical and testimonial evidence of the need to elevate and if an elevation limitation is included in the RFC, whether Plaintiff can perform any jobs.

## CONCLUSION

In light of the foregoing discussion, the Court need not consider Plaintiff's other arguments relating to substantial evidence. This matter is remanded for further proceedings consistent with this opinion.

Date: 09/08/2023     ENTER:

*Margaret J. Schneider*
United States Magistrate Judge